CHRISTIE v. PATORNO

(March 26, 1928. Opinion and Decree.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Judgment—Par. 106.**
Perjury on the part of a defendant in whose favor a judgment has been rendered is sufficient to constitute fraud and ill practices justifying an annulment under Art. 607 C. P.

2. **Louisiana Digest—Judgment—Par. 106, 118.**
Mere suspicion of the truth of defendant's testimony founded upon its improbability, or upon conflicting statements susceptible of explanation will not be sufficient to support a finding of perjury by defendant testifying as a witness in his own behalf.

Appeal from Civil District Court, Division "B." Hon. Mark M. Boatner, Judge.

Action by Mrs. Jennie M. Christie, wife of James W. Christie against John C. Patorno.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

McGiehan & Strauch, of New Orleans, attorneys for plaintiff, appellant.

J. A. Morales, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J.  This is an action of nullity under Art. 607 of the Code of Practice, which, in part, provides that a judgment may be annulled "where it appears that it has been obtained through fraud or other ill practices on the part of the party in whose favor it was rendered."

The fraud alleged is perjury on the part of defendant, testifying as a witness in his own behalf. Defendant filed an exception of no cause of action.

Whether perjury on the part of other witnesses would constitute fraud sufficient to sustain an action of nullity, may be doubtful, and may depend upon proof of defendant's connivance or subornation, but, we are convinced that perjury on the part of a defendant, in whose favor the judgment was subsequently rendered, is such gross fraud as would fully answer the requirements of Art. 607 C. P. Courts have wide discretion in estimating what degree of fraud and ill practice would vitiate a judgment. "It would be unfortunate if it were otherwise. Fraud vitiates everything and whatever Protean shape it may assume, justice should be left free to meet and thwart it." Lazarus vs. McGuirk, 42 La. Ann. 201, 8 South. 253. See also State ex rel Pelletier vs. Sommerville, Judge, 112 La. 1100, 36 So. 864; Miller vs. Miller, 151 La. 51; Spence vs. Spence, 158 La. 961, 105 So. 28; Gwin vs. Brown, 159 La. 575, 105 So. 624; Corpus Juris, Vol. 34, p. 284; Black on Judgments, page 968.

Plaintiff was injured in an automobile accident. She sued the present defendant, Jos. Patorno, and his sister, Mrs. Cornelia David, in solido. On the trial of the case Patorno testified that he was not the owner of the car which collided with plaintiff's car which at the time of the accident was driven by a negro chauffeur, and that the chauffeur was not in his employ. Mrs. David did not offer any defense. A judgment by default was en-

tered against her and shortly thereafter she went into bankruptcy.

Judgment was rendered in Patorno's favor absolving him from responsibility. That judgment is attacked here.

The question for our determination is whether Patorno committed perjury when he disclaimed ownership of the car.

The automobile accident occurred on Sunday July 6, 1924. On the trial, and in support of Patorno's testimony an act of sale dated July 3, 1924, and recorded in the conveyance office July 8, 1924, just two days after the accident and in which Patorno sold to his sister, Mrs. David, for $200.00 cash the offending automobile was offered in evidence.

Mrs. David, testifying in these proceedings, corroborated her brother and claimed that she paid the cash mentioned in the act of sale, being moved to purchase the automobile, a Ford, because of the distance between her house and the Mercy Hospital, where she was employed as a trained nurse.

Shortly after the accident Patorno sued the Menefee Motor Co., Inc., No. 154,284, C. D. C. In this suit he alleged, among other things, that he bought a new Ford car and in part payment traded in his old Ford (the same Ford which ran into plaintiff's car) for $225.00. It was the discovery of this evidence by plaintiff's counsel which caused this suit to be instituted. Patorno also testified in the proceedings referred to that he had brought his car around to the Menefee establishment to have it appraised, and in this suit that he had not been in the car since the accident. He also testified that Albert Bernard, the negro chauffeur for whose negligence he disclaimed responsibility, lived on his premises, 839 Royal Street, at the time of the accident and since (his sister, Mrs. David, lived elsewhere). Mrs. David, in explanation of her brother's action in trading the car she claimed was hers at the time of the accident stated that she became disgusted on account of the accident and a few days thereafter sold it back to her brother for $225.00, being the amount allowed on the trade.

There is sufficient showing to create a suspicion of fraud. The automobile was sold on July 3rd and only recorded on July 8th, two days after the accident. Defendant explains that July 4th being a holiday accounts for the failure to record on that day, and that Saturday, July 5th, was a half holiday and Sunday, the 6th, was a dies non but Monday, 7th, was not a holiday and the act only recorded on July 8th. But to suppose the act to have been antedated would involve a reflection upon the notary, who is disinterested, and we find no evidence to justify such reflection.

The conflicting evidence of defendant concerning the ownership of the car is more serious, but here again we are confronted with the notarial act purporting to convey the Ford to Mrs. David just before the accident. If we suppose the notary to have been deceived and that the cash which one of the parties gave to the other was immediately thereafter returned, we still have the testimony of Mrs. David. Of course, it may be said that Mrs. David had sufficient motive to, and did, commit perjury also, but her testimony though it makes some demand upon our credulity, and is, to say the least, an extraordinary statement, for, in buying and selling the Ford a few days before and a few days after the accident, she subjects herself to the suspicion that the dates of the sales are too convenient. However, it is quite possible that she did buy the Ford when she says she did and that her brother in trading for a new Ford treated his sister's

car as his own, and, thereafter, paid her the allowance made him in the transaction.

We do not feel that we should be justified in holding that Patorno and his sister concocted the story of the ownership of the automobile and that both, in relating it on the witness stand perjured themselves, as would be necessary to accept plaintiff's view. Something much stronger than suspicion must exist to support a charge of fraud founded upon perjury as a means of annulling a judgment.

Our conclusion is that the judgment appealed from is correct and it is therefore affirmed.